## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MICHAEL XAVIER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>YOUNG CONSULTING, LLC,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Xavier ("Plaintiff") individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Young Consulting, LLC ("Young Consulting" or "Defendant"). Plaintiff alleges the following upon information and belief based on, and the investigation of, counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1.     Plaintiff and the proposed Class Members, defined below, bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive personally identifiable information ("PII")[1] and protected health information

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

("PHI", and collectively with "PII", "Private Information") that was subsequently exposed in a data breach, which Young Consulting publicly disclosed on August 26, 2024 (the "Data Breach" or the "Breach").

2.      Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information. More than 950,000 consumers were affected by the Data Breach, in which their sensitive Private Information, including names, Social Security numbers, dates of birth, and insurance claims information, were accessed by an unauthorized third party.[2]

3.      Young Consulting is a Georgia based entity that provides integrated software solutions for marketing, underwriting, and administering medical stop-loss insurance for carriers, brokers, and third-party administrators, including for Blue Shield of California ("Blue Shield").[3]

4.      Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and the Class, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

---

[2] *Data Breach Notification*, MAINE OFFICE OF THE ATTORNEY GENERAL (August 26, 2024) **https://www.maine.gov/cgi-bin/agviewerad/ret?loc=1188** (last visited September 03, 2024).

[3] *Young Consulting LLC,* Home, https://www.youngconsulting.com (last visited September 03, 2024)

5.     On or around April 13, 2024, Young Consulting began experiencing IT difficulties.[4] Thereafter, Young Consulting launched an investigation with the assistance of a cybersecurity forensics firm.[5] The investigation determined that an unauthorized third party gained access to Young Consulting 's IT network between April 10, 2024, and April 13, 2024.[6]

6.     Young Consulting's investigation further determined that the unauthorized third party downloaded files containing the sensitive Private Information of more than 950,000 consumers, including names, Social Security numbers, dates of birth, and insurance claims information.[7]

7.     On June 28, 2024, Young Consulting provided Blue Shield confirmation that certain Blue Shield members' sensitive personal information was compromised in the Data Breach.[8]

---

[4] *Data Breach Notification*, MAINE OFFICE OF THE ATTORNEY GENERAL (August 26, 2024) **https://www.maine.gov/cgi-bin/agviewerad/ret?loc=1188** (last visited September 03, 2024).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

8.    Young Consulting filed its first public disclosure of the Data Breach on August 26, 2024 and began issuing notice letters to impacted individuals that same day.[9]

9.    Defendant failed to take precautions designed to keep consumers' Private Information safe and secure.

10.    Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information that it collected safe and secure from unauthorized access. Defendant collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

11.    Defendant admits that information in its system was accessed by unauthorized individuals.

12.    The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their Private Information and are subject to an increased risk of identity theft.

---

[9] *Data Breach Notification*, MAINE OFFICE OF THE ATTORNEY GENERAL (August 26, 2024)    https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/9cb5e8fe-3d04-48e5-a403-d478cdaf5c7f.html    (last    visited September 03, 2024).

13.    Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Private Information for Plaintiff and Class Members.

14.    As a result of the Defendant's inadequate digital security and notice process, Plaintiff and Class Members' Private Information was exposed to criminals. Plaintiff and the Class have suffered, and will continue to suffer, injuries including: financial losses caused by misuse of Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal, health, and financial information.

15.    Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

16.    Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; negligence per se; invasion of confidence; unjust enrichment; violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*; and violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq*.

17.    Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

### *Plaintiff*

18.    Plaintiff Michael Xavier is a citizen and resident of Roseville, California. On August 26, 2024, Young Consulting sent Plaintiff a data breach notice letter, informing him that his Private Information was compromised in the Data Breach. As a consequence of the Data Breach, Plaintiff has experienced an uptick in spam calls, text messages and emails. As a result of the Data Breach, Plaintiff has been forced to, and will continue to, invest significant time monitoring his accounts to detect and reduce the consequences of likely identity fraud. As a result of the Data Breach, Plaintiff is now subject to substantial and imminent risk of future harm.

*Defendant*

19.     Defendant Young Consulting is a Georgia based entity with its principal place of business located at 180 Interstate North Parkway SE Suite 400, Atlanta, GA 30339.[10] Young Consulting provides integrated software solutions for marketing, underwriting, and administering medical stop-loss insurance for carriers and brokers.[11]

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, at least one member of the Class defined below is a citizen of a different state than Defendant, and there are more than 100 putative Class Members.

21.     This Court has personal jurisdiction over Defendant because Defendant is registered to do business, and maintains its principal place of business, in Atlanta, Georgia.

22.     Venue is proper in these District under 28 U.S.C. § 1391(b)(2) because Defendant is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

---

[10] *Young Consulting LLC,* Home, https://www.youngconsulting.com (last visited September 03, 2024)
[11] *Id.*

FACTUAL ALLEGATIONS

**A.    Background on Defendant**

23.    Young Consulting is a Georgia based entity that provides integrated software solutions for marketing, underwriting, and administering medical stop-loss insurance for carriers, brokers, and third-party administrators, including to Blue Shield.

24.    In the ordinary course of its business practices, Defendant stores, maintains, and uses individuals' Private Information, including but not limited to: full names; addresses; Social Security numbers; dates of birth, and insurance policy/ claim information.

25.    Upon information and belief, Defendant made promises and representations that the Private Information collected from it would be kept safe, confidential, and that the privacy of that information would be maintained.

26.    Plaintiff and Class Members maintain a reasonable expectation that Defendant would comply with its obligations to keep their sensitive personal information confidential and secure from unauthorized access.

27.    As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties.

**B.     The Data Breach**

28.     On or around April 13, 2024, Defendant began experiencing IT difficulties.[12] Thereafter, Defendant launched an investigation with the assistance of a cybersecurity forensics firm.[13] The investigation determined that an unauthorized party gained access to Defendant's IT network between April 10, 2024, and April 13, 2024.[14]

29.     Defendant's investigation further determined that the unauthorized party downloaded files containing the sensitive Private Information of more than 950,000 consumers, including names, Social Security numbers, dates of birth, and insurance policy/claims information.[15]

30.     On June 28, 2024, Defendant provided Blue Shield confirmation that certain Blue Shield members' sensitive personal information was compromised in the Data Breach.[16]

---

[12] Arghire, Ionut, *950,000 Impacted by Young Consulting Data Breach,* https://www.securityweek.com/950000-impacted-by-young-consulting-data-breach/ (last visited September 03, 2024).
[13] *Id.*
[14] Mason Carter, *Young Consulting discloses massive data breach*, BASELINE (Aug. 30, 2024) https://www.baselinemag.com/news/young-consulting-discloses-massive-data-breach/ (last visited September 03, 2024).
[15] *Id.*
[16] *Data Breach Notification*, MAINE OFFICE OF THE ATTORNEY GENERAL (August 26, 2024) https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/9cb5e8fe-3d04-48e5-a403-d478cdaf5c7f.html (last visited September 03, 2024).

31.    Defendant filed its first public disclosure of the Data Breach on August 26, 2024, and began issuing notice letters to impacted individuals that same day.[17]

32.    While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

33.    Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C.    Defendant's Failure to Prevent, Identify, and Timely Report the Data Breach**

34.    Defendant admits that an unauthorized third party accessed its' IT network and obtained the sensitive Private Information of more than 950,000 consumers.

35.    Defendant failed to take adequate measures to protect its IT network against unauthorized access.

36.    Defendant was not only aware of the importance of protecting the Private Information that it maintains, as alleged, it promoted its capability to do so, as evident from their Privacy Policy.[18]

---

[17] *Id.*

[18] Privacy Policy, Young Consulting, https://www.youngconsulting.com/privacy-policy/ (last visited September 03, 2024).

37.    The Private Information that Defendant allowed to be exposed in the Data Breach is the type of sensitive personal information that Defendant knew or should have known would be the target of cyberattacks.

38.    Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[19] Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard consumers sensitive Private Information.

39.    The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[20] Immediate notification of a Data Breach is critical so that those impacted can take measures to protects themselves.

40.    Despite this guidance, Defendant delayed the notification of the Data Breach. Based on Defendant's public filing with the Office of the Maine Attorney General, the Data Breach occurred around, April 13, 2024, yet by its own admission, Defendant did not begin informing impacted consumers more than four months later on August 26, 2024.

---

[19] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION    (Oct.    2016),    https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business    (last    visited September 03, 2024).
[20] *Id.*

**D.    The Harm Caused by the Data Breach Now and Going Forward**

41.    Victims of data breaches are susceptible to becoming victims of identity theft.

42.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. § 248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[21]

43.    The type of data that was accessed and compromised here – such as, full names and Social Security numbers – can be used to perpetrate fraud and identity theft. Social Security numbers are widely regarded as the most sensitive information hackers can access.  Social Security numbers and dates of birth together constitute high risk data.

44.    Plaintiff and Class members face a substantial risk of identity theft given that their Social Security numbers, addresses, dates of birth, and other important Private Information were compromised in the Data Breach. Once a Social Security number is stolen, it can be used to identify victims and target them in fraudulent schemes and identity theft.

---

[21]    *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness (last visited September 03, 2024).

45.    Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

46.    When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[22]

47.    Sensitive personal information remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, someone can purchase[23] credit card information, and $150 for banking account.[24] Further, personal information can be sold at a price ranging from $40 to $200, and bank

---

[22] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited September 03, 2024).

[23] Ryan Smith, *Revealed – how much is personal information worth on the dark web?*, INSURANCEBUSINESS (May 1, 2023) https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx (last visited September 03, 2024).

[24] *Id.*

details have a price range of $50 to $200.[25] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[26]

48.    The Private Information compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information are worth more than 10 times on the black market."[27]

49.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[28]

50.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for

---

[25] *Id.*

[26] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015) https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft    (last    visited September 03, 2024).

[27] *Experts advise compliance not same as security*, RELIAS MEDIA (Mar. 1, 2015) https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (last visited September 03, 2024).

[28]    *2019    Internet    Crime    Report    Released*,    FBI, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (last visited September 03, 2024).

good."[29] Defendant did not rapidly report to Plaintiff and Class Members that their Private Information had been stolen.

51.    A compromised or stolen Social Security number cannot be addressed as simply as a stolen credit card. An individual cannot obtain a new Social Security number without significant work. Preventive action to defend against the possibility of misuse of a Social Security number is not permitted; rather, an individual must show evidence of actual, ongoing fraud activity to obtain a new number. Even then, however, obtaining a new Social Security number may not suffice. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[30]

52.    As a result of the Data Breach, the Private Information of Plaintiff and Class Members have been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered thereby as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this breach; (d) invasion

---

[29] *Id.*
[30] *Id.*

of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' Private Information.

53.    In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

54.    Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff and Class Members' Private Information; (c) failing to take standard and reasonably

available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

55.    The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

## CLASS ALLEGATIONS

56.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of

Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons in the United States whose Private Information was
> compromised in the Data Breach publicly announced by Defendant in
> August of 2024 (the "Class").

57.    Plaintiff brings this action individually and on behalf of the following

California subclass:

> All California residents whose Private Information was compromised
> in the Data Breach publicly announced by Defendant in August of 2024
> (the "California Subclass").

58.    Specifically excluded from the Class are Defendant, its officers,

directors, agents, trustees, parents, children, corporations, trusts, representatives,

employees, principals, servants, partners, joint venturers, or entities controlled by

Defendant, and its heirs, successors, assigns, or other persons or entities related to

or affiliated with Defendant and/or its officers and/or directors, the judge assigned

to this action, and any member of the judge's immediate family.

59.    Plaintiff reserves the right to amend the Class definitions above if

further investigation and/or discovery reveals that the Class should be expanded,

narrowed, divided into subclasses, or otherwise modified in any way.

60.    This action may be certified as a class action under Federal Rule of

Civil Procedure 23 because it satisfies the numerosity, commonality, typicality,

adequacy, and superiority requirements therein.

61.  <u>Numerosity (Rule 23(a)(1))</u>: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiff estimates that the Class is comprised of over 900,000 Class Members. The Class is sufficiently numerous to warrant certification.

62.  <u>Typicality of Claims (Rule 23(a)(3))</u>: Plaintiff's claims are typical of those of other Class Members because, Plaintiff, like the Class Members, had his Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and his claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members that was caused by the same misconduct by Defendant.

63.  <u>Adequacy of Representation (Rule 23(a)(4))</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

64.  <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the monetary damages suffered by individual Class Members is relatively small, the expense and burden of individual litigation make it impossible for individual Class

Members to seek redress for the wrongful conduct asserted herein.  If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

65.    Predominant Common Questions (Rule 23(a)(2)): The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c. Whether Defendant's storage of Plaintiff's Class Member's Private Information was done in a negligent manner;

d. Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Private Information;

e. Whether Defendant's conduct was negligent;

f. Whether Defendant's conduct violated Plaintiff's and Class Members' privacy;

g. Whether Defendant's conduct violated the statutes as set forth herein;

h. Whether Defendant took sufficient steps to secure its customers' Private Information;

i. Whether Defendant was unjustly enriched;

j. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

66.    Information concerning Defendant's policies is available from Defendant's records.

67.    Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

68.    The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

69.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

70.    Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION
### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and All Class Members)**

71.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 17 and paragraphs 23 through 55 as though fully set forth herein.

72.    Plaintiff brings this claim individually and on behalf of the Class Members.

73.    Defendant knowingly collected, came into possession of, and maintained Plaintiff and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

74.    Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

75.    Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' Private Information within its possession was compromised and precisely the types of information that were compromised.

76.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected its customers' Private Information.

77.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

78.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

79.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

80.    The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.  Failing to adequately monitor the security of its networks and systems; and

    c.  Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

81.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' within Defendant's possession.

82.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Private Information.

83.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendant's possession might have been compromised and precisely the type of information compromised.

84.    Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Member's Private Information. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the personal consumer information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

85.    It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

86.    It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would result in injuries to Plaintiff and Class Members.

87.    Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised.

88.    But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

89.    As a result of Defendant's failure to timely notify Plaintiff and Class Members that their Private Information had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

90.    As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms

25

of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

## COUNT II
## NEGLIGENCE PER SE
### (On Behalf of Plaintiff and All Class Members)

91.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 17 and paragraphs 23 through 55 as though fully set forth herein.

92.    Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff and Class members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

93.    Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and not complying with industry standards.

94.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

95.    Defendant's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

96.    Class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

97.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

98.    As a result of Defendant's negligence, Plaintiff and the other Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

**COUNT III**
**INVASION OF CONFIDENCE**
**(On Behalf of Plaintiff and All Class Members)**

99.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 17 and paragraphs 23 through 55 as though fully set forth herein.

100.    Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and the Class's Private Information that was entrusted to it.

101.    As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by terms and expectations that Plaintiff's and the Class's Private Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

102.    Defendant was entrusted with Plaintiff's and Class Members' Private Information with the explicit and implicit understandings that it would protect and not permit the Private Information to be disseminated to any unauthorized third parties.

103.    By collecting, storing, and maintaining Plaintiff's and Class Members' Private Information, Defendant had a duty to take precautions to protect that Private Information from unauthorized disclosure.

104.    Defendant voluntarily received in confidence Plaintiff's and  Class Members' Private Information with the understanding that Private Information

would not be disclosed or disseminated to the public or any unauthorized third parties.

105.   As a result of Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and the Class's Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and the Class's confidence, and without their express permission.

106.   As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and the Class have suffered damages.

107.   But for Defendant's disclosure of Plaintiff's and the Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and the Class's Private Information as well as the resulting damages.

108.   The injury and harm Plaintiff and the Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' Private Information. Defendant knew or should have known its methods of accepting and securing Plaintiff and Class Members' Private Information was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiff's and Class Members' Private Information.

109.    As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Class, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of current and former customers; and(viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

110.    As a direct and proximate result of Defendant breaches of confidence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury

and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**<u>COUNT IV</u>**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and All Class Members)**

111.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 17 and paragraphs 23 through 55 as though fully set forth herein.

112.   Plaintiff and Class Members conferred a benefit upon Defendant by Defendant obtaining their Private Information.

113.   Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and Class Members. Defendant also benefited from the receipt of Plaintiff's and Class Members' Private Information, as this was used for Defendant to administer its services.

114.   Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' services and their Private Information because Defendant failed to adequately protect their Private Information.

115.   Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

## COUNT V
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On behalf of Plaintiff and the California Subclass Members)

116.   Plaintiff incorporates by reference and re-alleges each allegation set forth above in paragraphs 1 through 17 and paragraphs 23 through 55 as if fully set forth herein.

117.   Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

118.   Defendant has engaged in unlawful and unfair business practices within the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code Sections 17200, *et seq*.

119.   Defendant stored the Private Information of Plaintiff and Subclass Members in its IT network.

120.   Defendant knew or should have known that it did not maintain reasonable and appropriate security measures that complied with federal regulations to safeguard consumers' Private Information.

121.   Moreover, Defendant failed to disclose that Plaintiff's and Subclass Members' Private Information were susceptible to hackers as a result of Defendant's inadequate data security measures, and that Defendant was the only one in possession of that material information. Defendant had a duty to disclose

information regarding the susceptibility of Plaintiff's and Subclass Members' Private Information.

122.  Defendant's actions and inactions violated the "unlawful" prong of the UCL. Defendant violated Section 5(a) of the FTC Act (which is a predicate legal violation for this UCL claim) by misrepresenting, by omission, the safety and security of their computer systems, and its ability to safely store Plaintiff's and Subclass Members' Private Information.

123.  Defendant further violated Section 5(a) of the FTC Act by failing to implement reasonable and appropriate security measures or follow industry standards in its data security practices, by failing to ensure its affiliates with which it directly or indirectly shared the Private Information did the same, and by failing to timely notify Plaintiff and Class Members of the Data Breach.

124.  Had Defendant complied with these legal requirements, Plaintiff and Class Members would not have suffered the damages related to the Data Breach, and consequently from Defendant's failure to timely notify Plaintiff and Class Members of the Data Breach.

125.  Defendant's actions and inactions further violated the "unfair" prong of the UCL.

126.  Under the "balancing test," Defendant engaged in unfair business practices.  The harm caused by Defendant's actions and omissions, as described in

detail above, greatly outweigh any perceived utility. Defendant's failure to follow basic data security protocols and failure to disclose inadequacies of Defendant's data security cannot be said to have had any utility at all. All of Defendant's actions and omissions in this respect were clearly injurious to Plaintiff and Subclass Members, directly causing the harms alleged below.

127.    Similarly, Defendant engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described herein, violated fundamental public policies expressed by the California Legislature. See, e.g., Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the California law.

128.    Defendant engaged in unfair business practices under the "FTC test." The harm caused by Defendant's actions and omissions, as described in detail above, is substantial in that it affects thousands of Subclass Members and has caused those

persons to suffer actual harm. Such harms include a substantial risk of identity theft, disclosure of Plaintiff's and Subclass Members' Private Information to third parties without their consent, diminution in value of their Private Information.

129.   These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Subclass Members. They were likely to deceive the public into believing their Private Information was securely stored when it was not. The harm these practices caused to Plaintiff and Subclass Members outweighed their utility, if any. Defendant's wrongful conduct is substantially injurious to consumers, offends legislatively declared public policy, and is immoral, unethical, oppressive, and unscrupulous.

130.   Plaintiff and Subclass Members continue to suffer harm, as Plaintiff's and Subclass Members' Private Information remains in Defendant's possession, without adequate protection, and remains in the hands of those who obtained it without their consent.

131.   Defendant's actions and omissions violated Section 5(a) of the Federal Trade Commission Act. See 15 U.S.C. § 45(n) (defining "unfair acts or practices" as those that "cause[] or [are] likely to cause substantial injury to consumers which [are] not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition"); *see also, e.g., In re*

*LabMD, Inc.,* FTC Docket No. 9357, FTC File No. 102-3099 (July 28, 2016) (failure to employ reasonable and appropriate measures to secure personal information collected violated § 5(a) of FTC Act).

132.   Plaintiff and Class Members suffered injury in fact and lost money or property as a result of Defendant's violations of the UCL. Plaintiff and the California Subclass suffered from entering into transactions with Defendant that should have included adequate data security for their Private Information, by experiencing a diminution of value in their Private Information as a result if its theft by cybercriminals, the loss of Plaintiff's and Subclass Members' legally protected interest in the confidentiality and privacy of their Private Information, the right to control that information, and additional losses as described above.

133.   As a result of Defendant's unlawful and unfair business practices in violation of the UCL, Plaintiff and Subclass Members are entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

**COUNT V**
**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT**
**("CCPA")**
**Cal. Civ. Code § 1798.100, *et seq*.**
**(On Behalf of Plaintiff and California Subclass Members)**

136.   Plaintiff incorporates by reference and re-alleges each allegation set forth above in paragraphs 1 through 17 and paragraphs 23 through 55 as if fully set forth herein.

137.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass.

138.    Defendant violated Section 1798.150(a) of the CCPA through its failure to implement and maintain reasonable data security procedures and practices appropriate to the nature of the information provided to it by Plaintiff and Subclass Members. This includes Defendant's failure to adequately safeguard individuals' Private Information. As a direct and proximate result, Plaintiff's and Subclass Members' Private Information was subjected to unauthorized access and exfiltration, theft, or disclosure.

139.    Defendant is an organization who, in the ordinary course of its business practices, stores, maintains, uses and/or shares the Private Information of individuals.

140.    As a direct and proximate result of Defendant's actions and omissions alleged herein, Plaintiff and Subclass Members were injured and lost money, property, and/or the interest in the confidentiality and privacy of their Private Information, as well as additional losses as described above.

141.    Plaintiff and Subclass Members have suffered actual injury and seek relief under §1798.150(a), including but not limited to, statutory damages no less than $100 and up to $750 per patient record subject to the data breach, recovery of actual damages; injunctive or declaratory relief requiring Defendant implement

reasonable security policies and procedures to protect their Private Information that remains in its possession; any other relief the court deems proper; and attorneys' fees and costs.

142.   Under Section 1798.150(b), Plaintiff has sent a notice letter outlining Defendant's specific violations of the CCPA to Defendant's registered agent for service of process contemporaneously with the filing of this Complaint. Plaintiff will seek to amend the Complaint to seek relief once the requisite 30-day notice period has expired to state that Plaintiff provided Defendant proper notice of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)   For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representatives of the Class and his counsel as Class Counsel;

(b)   For an order declaring the Defendant's conduct violates the laws referenced herein;

(c)   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)   For damages in amounts to be determined by the Court and/or jury;

(e)   An award of statutory damages or penalties to the extent available;

(f)     For pre-judgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of monetary relief; and

(h)     Such other and further relief as the Court deems necessary and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: September 4, 2024          Respectfully submitted,

**HERMAN JONES LLP**

By: /s/ *Candace N. Smith*
    John C. Herman (Bar No. 348370)
    Candace N. Smith (Bar No. 654910)
    3424 Peachtree Road NE
    Suite 1650
    Atlanta, Georgia 30326
    Telephone: 404-504-6555
    Email: jherman@hermanjones.com
    Email: csmith@hermanjones.com

    Courtney E. Maccarone*
    **LEVI & KORSINSKY, LLP**
    33 Whitehall Street, 17th Floor
    New York, NY 10004
    Telephone: (212) 363-7500
    Facsimile: (212) 363-7171
    Email: cmaccarone@zlk.com

    *pro hac vice* forthcoming

    *Counsel for Plaintiff*